IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04 CV 251

| | |
|---|---|
| MICHAEL J. QUILLING, Receiver ) | |
| for FREDERICK J. GILLILAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GRAND STREET TRUST, HEARTLAND ) | |
| CONTROL TRUST, FUTURE CONTROL ) | ORDER |
| TRUST, MARIE MARGARITE GUECO ) | |
| MERCADO PAQUETTE, REIN EVANS ) | |
| SESTANOVICH, L.L.P. f/k/a ) | |
| DRESSLER REIN EVANS & ) | |
| SESTANOVICH, L.L.P., ) | |
| MELROSE ESCROW, INC., AND ) | |
| PAUL J. COHEN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**THIS MATTER IS BEFORE THE COURT** upon the Motions to Dismiss filed by Defendant Rein Evans Sestanovich, f/k/a Dressler Rein Evans & Sestanovich, L.L.P. ("Rein Evans") and by Defendants Marie Paquette, Grand Street Trust, Heartland Control Trust, and Future Control Trust ("Paquette Defendants")(docs.7, 20). After carefully reviewing the pleadings, this Court determines that the motions to dismiss should be denied.

I. Factual and Procedural Background

In March 2002, the Securities and Exchange Commission instituted suit against Frederick Gilliland in connection with a Ponzi scheme Gilliland had orchestrated to defraud investors of

1

approximately $29 million.[1]  On May 21, 2003, Michael J. Quilling was appointed as receiver for the estate of Frederick J. Gilliland, including entities such as Sterling Assets Services, Ltd., and Sterling Management Services, Inc., that were owned or controlled by Gilliland. The purpose of this receivership was to preserve and protect the assets of the Receivership Estate for the benefit of all creditors of the Receivership Estate including investors who had been defrauded by Gilliland's Ponzi scheme.

In this lawsuit, the Receiver seeks to recover assets of the Receivership Estate that were fraudulently transferred to the Defendants as part of Gilliland's Ponzi scheme.  Specifically, the Receiver seeks to recover in excess of $2.5 million of investor funds that were fraudulently diverted to the Defendants in 1998. These funds were fraudulently transferred from entities owned or controlled by Gilliland to the Defendants.

Defendant Rein Evans and the Paquette Defendants move to dismiss on the following grounds:  (1) lack of personal jurisdiction; (2) lack of standing; and (3) violation of the statute of limitations.  After reviewing the pleadings, this Court finds that Defendants' arguments ignore both the purpose of federal equitable receiverships and the procedures in place to meet that purpose.  Accordingly, for the following reasons, Defendants' Motions to Dismiss are denied.

---

[1] Gilliland was indicted by the United States for his criminal activity in this case and pled guilty to the charges on June 24, 2005.

## II. Analysis

### A. Personal Jurisdiction

Defendants argue that this Court lacks personal jurisdiction over them because they do not have sufficient minimum contacts with North Carolina, the forum state. This argument is unpersuasive.

The *in personam* jurisdiction of a Court in a federal equity receivership proceeding is not governed by traditional minimum contacts analysis. Rather, in cases involving federal equity receiverships, the receivership court acquires nationwide jurisdiction based on the interplay of 28 U.S.C. § 754 and 28 U.S.C. § 1692. *See S.E.C. v. Bilzerian*, 378 F.3d 1100, 1104 (D.C. Cir. 2004); *S.E.C. v. Vision Comm., Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996); *American Freedom Train Foundation v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984); *Haile v. Henderson Nat'l. Bank*, 657 F.2d 816, 823-24 (6th Cir. 1981); *Wing v. Storms*, No. 1:02-CV-127, 2004 WL 724448, *1 (D. Utah February 5, 2004); *Terry v. June*, No. 3:03-CV-52, 2003 WL 22125300, *5 (W.D. Va. Sept. 12, 2003); *S.E.C. v. Cook*, No. 3:01-CV-480, 2001 WL 803791, *2-3 (N.D. Tex. July 11, 2001); *Select Creations, Inc. v. Paliafito America, Inc.*, 852 F. Supp. 740, 780-81 (E.D. Wis. 1994).

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, a district court may acquire personal jurisdiction through the use of statutes of the United States if the relevant statute

3

provides for service of process upon a party not an inhabitant of, or found within, the state in which the district court is located. Fed. R. Civ. P. 4(k)(1)(D); *see also Bilzerian*, 378 F.3d at 1103; *Haile*, 657 F.2d at 824. Thus, if a congressional statute provides for extraterritorial or nationwide service of process, the district court has personal jurisdiction over all who have minimum contacts with the extended territory of the district court. *See Cook*, 2001 WL 803791, *2-3 (*citing Busch v. Buchman, Buchman & O'Brien Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994)).

In receiverships, 28 U.S.C. §§ 754 and 1692 provide for this extra-territorial service of process. If the defendants have minimum contacts with the expanded territory of the district court, due process is satisfied, and the receivership court will have personal jurisdiction over the defendants. *See Cook*, 2001 WL 803791, *2-3.

Section 754 extends the territorial jurisdiction of the district court to any territory where property of the receivership estate is present so long as the filing requirements of Section 754 are met. Section 754 provides in relevant part:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof ....
>
> Such receiver shall, within ten days after the entry of the his order of appointment,

4

>           file copies of the complaint and such order
>           of appointment in the district court for each
>           district in which property is located.

28 U.S.C. § 754.

Section 1692 then provides for service of process in any such district where Section 754 filings are properly made. Section 1692 provides in relevant part:

>           In proceedings in a district court where a
>           receiver is appointed for property, real,
>           personal or mixed, situated in different
>           districts, process may issue and be executed
>           in any such district, but orders affecting
>           the property shall be entered of record in
>           each such district.

28 U.S.C. § 1692.

The interaction of Sections 754 and 1692 provide the receivership court with *in rem* and *in personam* jurisdiction over all persons with minimum contacts to the districts where Section 754 filings are timely made. *See Bilzerian*, 378 F.3d at 1103; *Vision Comm., Inc.*, 74 F.3d at 290; *Haile*, 657 F.2d at 823-24. Courts addressing this interplay of Rule 4 and Sections 754 and 1692 recognize that these provisions for extraterritorial service are "made to facilitate judicial efficiency by permitting courts to manage claims regarding receivership property in a single forum." *Terry*, 2003 WL 22125300, *5.

Here, the Receiver was originally appointed on May 21, 2003, and was then reappointed by Order dated November 24, 2003.[2]

---

[2] The Receiver moved for reappointment specifically so that he could institute the instant proceedings. Citing no authority, Defendants argue that the reappointment of a receiver cannot

5

Within the ten-day period, the appropriate Section 754 filings were made in each of the districts of California where the Defendants were located at the time the instant transfer arose (doc. 10, Ex. A). Because the filings were made within ten days of the Receiver's reappointment, they are effective to extend the jurisdiction of this Court to any Defendants who have minimum contacts with California. *Vision Comm., Inc.*, 74 F.3d at 291; *Terry*, 2003 WL 22125300, *3 (noting that courts addressing this issue "unanimously suggest that an order of reappointment will renew the ten-day filing deadline mandated by Section 754.")

Defendants do not contest that they have sufficient minimum contacts with the districts of California. Accordingly, by virtue of the timely made Section 754 filings and the provisions of Section 1692, this Court has personal jurisdiction over the Defendants due to their minimum contacts with the state of California.

Defendants argue that Sections 754 and 1692 only apply to the extra-territorial extension of *in rem* jurisdiction, citing *American Freedom Train Foundation v. Spurney*, 747 F.2d 1069 (1st Cir. 1984). Defendants misstate the holding in this case. In *American Freedom Train Foundation*, the receiver sought *in personam* jurisdiction over defendants, though no Section 754 filing had been made in the districts where the defendants were

---

restart the ten-day clock for purposes of Section 754 filings. Instead, "courts having addressed this issue unanimously suggest that an order of reappointment will renew the ten-day filing deadline mandated by Section 754." *Terry*, 2003 WL 22125300, *3.

6

located. The district court held that because no Section 754 filings had been made in those districts, the court could not obtain *in personam* jurisdiction over the defendants. On appeal, the First Circuit clarified that the use of a Section 754 filing was not the exclusive means to gain *in personam* jurisdiction over defendants. *Id.* (holding that the district court erred when it concluded that jurisdiction in an *in personam* receivership action is governed exclusively by Section 754). Thus, the First Circuit did not hold that Section 754 cannot extend *in personam* jurisdiction, but rather acknowledged that Section 754 will provide *in personam* jurisdiction so long as the filing requirements are met in the district where the defendant resides.

Defendants also rely on *Stenger v. World Harvest Church, Inc.,* 2003 WL 22048047 (N.D. Ill. Aug. 29, 2003), an unreported decision out of the United Stated District Court for the Northern District of Illinois. This case and a related case decided by the same judge, *Stenger v. Leadenhall Bank & Trust Co., Ltd.*, 2004 WL 609795 (N.D. Ill. Mar. 19, 2004) are the only two cases that have held that the interaction of Sections 754 and 1692 do not extend *in personam* as well as *in rem* jurisdiction. These decisions are not binding on this Court and they fly squarely in the face of overwhelming authority to the contrary. *See Bilzerian*, 378 F. 3d 1100 (rejecting the reasoning in the *Stenger* opinions and citing the many courts holding to the contrary).

Lastly, Defendants cite *Gilchrist v. GE Capital Corp.*, 262 F.3d 295 (4th Cir. 2001), in support of their argument that Section 754 and Section 1692 do not extend *in personam* jurisdiction. In *Gilchrist*, the Fourth Circuit held that Section 754 alone does not provide *in personam* jurisdiction unless there is an express congressional grant of personal jurisdiction. *Id.* at 301. However, the Court did not consider (nor was it briefed or argued) whether Section 1692 would provide such a congressional grant of personal jurisdiction (as has been held by each of the cases cited above). *Id.*

Instead, the Court expressly refused to rule on the issue of personal jurisdiction as it had not properly been raised by the parties. *Id.* at 301-02. As the issue has never been expressly ruled on by the Fourth Circuit, there is no reason for this Court to conclude, as Defendants suggest, that the Fourth Circuit has held that there is no *in personam* jurisdiction. There is no indication that the Fourth Circuit would follow the interpretation of two unreported cases from the Northern District of Illinois rather than reported decisions from at least three Circuits. Additionally, a district court opinion from within the Fourth Circuit indicates that under Fourth Circuit precedent, it is proper to rely on Sections 754 and 1692 to assert personal jurisdiction. *Terry*, 2003 WL 22125300, *4.

The facts of *Terry* are indistinguishable from the facts presented by this case. *Id.* at *1. Terry was appointed receiver

8

for an individual and his entities that had engaged in a Ponzi scheme.  *Id.*  Terry filed suit against June to recover receivership assets that were transferred to June.  *Id.*  June sought to dismiss the claims on the grounds that the Virginia court lacked personal jurisdiction over him as he was a resident of Michigan who had no contacts with the state of Virginia.  *Id.*  Relying on the interplay of Sections 754 and 1692, the court held that the assertion of jurisdiction would be proper so long as the assertion of jurisdiction over the defendant is compatible with due process.  *Id.* at *4.  The Court held that the "the congressionally articulated policy permitting the assertion of *in personam* jurisdiction should prevail except in cases of extreme inconvenience or unfairness."  *Id.* at *5.  The Court noted that "such cases arise where the burden of distant litigation is so great as to put the defendant at a severe disadvantage ....  when the defendant is located within the United States, however, any inconvenience will rarely rise to a level of constitutional concern."  *Id.* at *4.  Though June would encounter some inconvenience in defending the suit in Virginia as he was a Michigan resident, the court held that this inconvenience did not rise to the level of extreme inconvenience or unfairness so as to implicate due process concerns.  *Id.* at *5.

In the same way, in this case, although the Defendants may be inconvenienced by litigating this matter in North Carolina, such inconvenience is not so extreme as to justify thwarting the

9

congressionally articulated policy that allows for extraterritorial jurisdiction in receivership cases. Therefore, it is appropriate for this receivership court to exercise *in personam* jurisdiction over Defendants.

**B. Standing**

Defendants argue that the Receiver lacks standing to assert this claim because he is bringing claims that belong to the defrauded investors, rather than to the Receivership Estate. This argument is unpersuasive.

The Receiver is asserting fraudulent transfer claims that belong to Sterling Asset Services, Ltd., a corporate entity from whom the assets were fraudulently transferred. The funds at issue were transferred from an account in the name of Sterling Asset Services, Ltd. to a NationsBank account in the name of MM ACMC Banque Commerce, Inc. (the "NationsBank Account"). While the funds were in the NationsBank Account, Sterling Asset Services, Ltd. retained ownership and control of the funds. The Complaint alleges that the funds were then transferred from the NationsBank Account through a series of accounts held by the Paquette Defendants at the direction of Gilliland. The Complaint alleges that after being laundered through these accounts, approximately $1.5 million of these funds were then paid to Defendant Rein Evans. According to the Complaint, Rein Evans then distributed approximately $700,000 to Defendant Melrose Escrow

10

Account, $225,000 to Defendant Cohen's law firm trust account, and kept at least $150,000 as legal fees.

The Receiver was appointed as receiver for Gilliland and for the "Receivership Estate" which is defined as including all assets of Sterling Assets Services, Ltd. and Sterling Management Services, Inc. and the assets of any other entity owned or controlled by Gilliland. The fraudulently transferred funds were owned by Sterling Asset Services, Ltd., an entity owned and controlled by Gilliland. Therefore, the Receiver has standing to assert the fraudulent transfer claims on behalf of Sterling Asset Services, Ltd. to recover funds and assets that were wrongfully diverted by Gilliland while he was in control of Sterling Asset Services, Ltd.

Defendants rely on *Fleming v. Lind-Waldock & Co.*, in support of their arguments regarding standing. *Fleming* is easily distinguished. In *Fleming*, a receiver was appointed for USIC, a corporation. 922 F.2d 20, 22 (1st Cir. 1990). The receiver filed claims against third-parties alleging violations of the Commodity Exchange Act with regard to accounts that contained investor funds that were maintained with the third parties. *Id.* The receiver filed the claims both on behalf of USIC and on behalf of the investors. *Id.* The court dismissed the receiver's claims on two grounds. First, the court found that because USIC did not own the funds in the account, it had not and could not

plead that it had suffered damages relating to the account. *Id.* at 24.

Here, the transferred funds were owned by Sterling Asset Services, Ltd. When these funds were fraudulently transferred, Sterling Asset Services, Ltd. was damaged due to the loss of these funds. Moreover, the Receiver has not brought any claims on behalf of the investors. While the Complaint alleges that investors were ultimately harmed and defrauded by Gilliland's actions, the claims are brought on behalf of Sterling Asset Services, Ltd.

In a case analogous to this one, the Seventh Circuit held that a receiver can bring fraudulent transfer claims against third-parties. *Scholes v. Lehmann*, 56 F.3d 750, 754-55 (7th Cir. 1995). Scholes was appointed receiver for Michael Douglas and corporations controlled by him that had participated in a Ponzi scheme. *Id.* at 752. Scholes brought fraudulent transfer claims against third-parties who had received transfers from the corporate entities. *Id.* at 753. The court held that because the corporate entities were harmed when assets were diverted through the fraudulent transfer, the receiver, as the holder of claims belonging to the corporations, had standing to assert these claims. *Id.* at 754-55.

The third-parties argued that principles of *in pari delicto* should bar the claims of these corporations because they had been participants in the wrongdoing. *Id.* The court rejected this

argument stating that "[t]he defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." *Id.* at 754.

Similarly, in this case, once the Receiver was appointed, Sterling Asset Services, Ltd. was freed from the control of Gilliland, and it became entitled to the return of the funds that were wrongfully diverted to the Defendants. Under the clear and persuasive reasoning of the court in *Scholes*, the Receiver, as receiver for all entities owned or controlled by Gilliland, including Sterling Asset Services, Ltd., properly has standing to bring the fraudulent transfer claims that he is asserting against the Defendants.

### C. Statute of Limitations

Lastly, Defendants argue that the statute of limitations has run on this claim. This argument is unpersuasive.

Under both California and North Carolina law,[3] claims to recover fraudulently transferred assets must be brought within four years of the transfer. If the transfers were made with the intent to hinder, delay or defraud creditors, within one year of when the transfer was or could have reasonably been discovered by the claimant. Cal. Civ. Code §3439.09; N.C. Gen. Stat. § 39-23.9.

---

[3]

As noted above, because it is not clear whether the transfer occurred in North Carolina or California, it is not clear which state law controls but the outcome is the same under the laws of either state.

13

This case involves a transaction that Gilliland directed with the intent to hinder, delay or defraud creditors. In cases involving Ponzi schemes, fraudulent intent on the part of the transferor is inferred. *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 656 (M.D. Fla. 2002)(holding that payments made pursuant to a Ponzi scheme were made with the intent to defraud creditors and were as such fraudulent conveyances under section 726.105(a) of the Florida Fraudulent Transfers Act); *Quilling v. Gilliland*, No. 3:01-CV-1617, 2002 WL 373560, *2 (N.D. Tex. March 6, 2002)(recognizing that a transferor's "intent to hinder, delay or defraud is established by the mere existence of the Ponzi scheme."); *S.E.C. v.* Cook, 2001 WL 256172, *3 (N.D. Tex. March 8, 2001)(same); *In re Ramirez*, 209 B.R. 424, 434 (Bankr. S.D. Tex. 1997)(holding that as a matter of law, payments of commissions and profits in a Ponzi scheme constituted transfers made with actual intent to hinder, delay and defraud); *Merrill v. Abbott (In re Independent Clearing House Company)*, 77 B.R. 843, 860 (D. Utah 1987).

The Receiver brought the claims in this suit within one year of when the fraudulent transfer was or could reasonably have been discovered. The Receiver was appointed by order dated May 21, 2003. The fraudulent transfers involved in this lawsuit could not have been discovered prior to that time because Gilliland remained in control of Sterling Asset Services, Ltd. Equitable tolling principles recognize that so long as a corporation

14

remains under the control of wrongdoers, it cannot be expected to take action to vindicate the harms and injustices perpetrated by the wrongdoers. *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 772 (4th Cir. 1995). While Gilliland remained in control of Sterling Asset Services, Ltd., the fraudulent transfers were concealed and could not reasonably have been discovered. These transfers only became discoverable when the Receiver was appointed and placed in control of Sterling Asset Services, Ltd. *In re Blackburn*, 209 B.R. 4, 13 (Bankr. M.D. Fla. 1997)(holding that under the principles of adverse domination, the statute of limitations was tolled until the appointment of the receiver). The Receiver was appointed on May 21, 2003. This lawsuit was filed on May 20, 2004. Because this lawsuit was filed within one year of when the fraudulent transfer was or reasonably could have been discovered, the Receiver's claims are not barred by the statute of limitations. Cal. Civ. Code § 3439.09; N.C. Gen. Stat. § 39-23.9.

### III. Conclusion

Applying the law to the facts of this case, Defendants' arguments in support of their motions to dismiss are unpersuasive. Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defendants' motions to dismiss (docs. 7, 20) **be denied**.

**Signed: August 12, 2005**

Graham C. Mullen
Chief United States District Judge